# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ROBERT LEWIS and SUTTER CAPITAL
MANAGEMENT, LLC, on behalf of
themselves and all others similarly situated,

        **Plaintiffs,**

-vs-                                       **Case No.  6:07-cv-1245-Orl-22DAB**

JAMES M. SENEFF, JR.; ROBERT A.
BOURNE; CNL REALTY
CORPORATION; and FF-TSY HOLDING
COMPANY II, LLC, formerly known as
Trustreet Properties, Inc.,

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration with oral argument[1] on the following motion filed

herein:

| MOTION: | MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FILED BY FF-TSY HOLDING COMPANY II, LLC (Doc. No. 77) |
|---|---|
| **FILED:** | **October 17, 2008** |
| _THEREON_ it is **RECOMMENDED** that the motion be **GRANTED**. | |

| MOTION: | MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FILED BY JAMES M. SENEFF, JR., ROBERT A. BOURNE, AND CNL REALTY CORPORATION (Doc. No. 79) |
|---|---|
| **FILED:** | **October 17, 2008** |
| _THEREON_ it is **RECOMMENDED** that the motion be **GRANTED**. | |

---

[1]Oral argument on the Motions to Dismiss was held on January 8, 2009.

This proposed class action arises out of the merger of three of America's primary restaurant real estate companies involved in the ownership, leasing and financing of restaurant properties. Plaintiffs Robert Lewis and Sutter Capital Management LLC ("Plaintiffs"), two limited partners on behalf of a proposed class of 45,000 limited partners in eighteen related limited partnerships, allege that Defendants James M. Seneff, Jr., Robert A. Bourne, CNL Realty Corporation (the "General Partners") undervalued the limited partners' units in order to divert to themselves $140 million in merger consideration that Plaintiffs allege should have been paid to the limited partners; Plaintiffs are also suing the successor to the merged entity, FF-TSY Holding Company II, LLC ("FF-TSY"), for claims related to the merger. Doc. No. 51.

The General Partner Defendants and FF-TSY each move for dismissal of claims asserted in the Plaintiffs' Second Amended Complaint, arguing that Plaintiffs as limited partners lack standing to assert what are essentially derivative claims of the limited partnerships, and their claims are barred by the doctrine of issue preclusion from a previous litigation on the matter. For the reasons set forth herein, the Court recommends that the Motions to Dismiss (Doc. Nos. 77, 79) be **GRANTED.**

## PROCEDURAL HISTORY IN THIS COURT

Plaintiffs filed their original proposed class action Complaint in this Court on August 2, 2007. Doc. No. 1. The parties moved to have the case designated a Track Three case and to stay various deadlines. Doc. Nos. 35, 37. District Judge Antoon stayed the deadlines for filing the Motion for Class Certification, the Case Management Report, and conducting discovery until further order of the Court. Doc. No. 37. Following the Defendants filing their Motions to Dismiss the Complaint (Doc. Nos. 46, 47), Plaintiffs filed their Amended Class Action Complaint on November 15, 2007. Doc. No. 51. The Motions to Dismiss the original Complaint were denied as moot. Doc. No. 55.

Defendants subsequently filed Motions to Dismiss the Amended Complaint (Doc. Nos. 58, 60) on January 8, 2008. The Motions to Dismiss were referred to this Court on July 22, 2008[2].

On August 5, 2008, this Court entered an Order to Show Cause (Doc. No. 67) why the case should not be dismissed for lack of subject matter jurisdiction[3], and the parties filed responses (Doc. Nos. 68, 69, 70). Plaintiffs were ordered to re-file their claims clarifying the basis for jurisdiction, and they filed their Second Amended Class Action Complaint on September 15, 2008. Doc. No. 72. On October 3, 2008 the Court set a briefing schedule and Defendants filed their Motions to Dismiss on October 17, 2008 (Doc. Nos. 77, 79), Plaintiffs filed their opposition (Doc. No. 81) on November 17, 2008, and Defendants filed their Replies on December 5, 2008. Doc. Nos. 84, 85. The Court heard oral argument on January 8, 2009. *See* Doc. No. 92 (transcript). Plaintiffs sought and were granted leave to file a supplemental memorandum, which they filed on January 23, 2009. Doc. No. 91. The matter is now ripe for determination.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). To satisfy the Rule 8 pleading requirements, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the

---

[2]The case was reassigned upon the recusal of Magistrate Judge Gregory J. Kelly on July 21, 2008. Doc. No. 66.

[3]Plaintiffs alleged jurisdiction in this Court on the basis of 28 U.S.C. 1332(a), diversity of citizenship without properly asserting a sufficient amount in controversy or the membership of various entities (Doc. No. 51 ¶ 30) necessary to determine if complete diversity existed. Doc. No. 67. The Court ordered Plaintiffs to clarify the basis of jurisdiction, and, in response, they sought to amend their complaint. Doc. No. 68. The Court allowed Plaintiffs to file a Second Amended Complaint, in which they were to clarify their jurisdictional allegations. Doc. No. 71. The Court is satisfied with the jurisdictional allegations, and there is no objection on that basis by Defendants. *See* Doc. No. 79 at 3 n. 3. The Order to Show Cause is thus now discharged.

grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (citations omitted). Previously, the general standard provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

However, the former "no set of facts" language in *Conley v. Gibson*, has been "retired" in favor of a somewhat heightened requirement for a plaintiff to supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Huggins v. Marriott Ownership Resorts, Inc.*, No. 6:07-cv-1514-Orl-22KRS, 2008 WL 552590 (M.D. Fla. Feb. 27, 2008) (discussing *Twombly* in dismissing contract claims) (Conway, J.); *see also In re Faro Technologies Securities Litigation*, 534 F.Supp.2d 1248, 1255 (M.D. Fla. 2007) (granting dismissal of certain securities fraud claims).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965. Plaintiff must plead enough facts to state a plausible, and not merely conceivable, basis for the claim. *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937, 1940 (May 18, 2009); *Twombly*, 550 U.S. at 556. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Iqbal*, __ U.S. at __, 129 S.Ct. at 1940; *Twombly*, 550 U.S. at 556. Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of a plaintiff's complaint, there remains a

dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

## BACKGROUND FACTS[4]

The Plaintiffs[5] were investors in eighteen CNL Income Fund Limited Partnerships[6] (collectively the "CNL Income Funds"), organized between 1985 and 1995 as Florida limited partnerships. Second Amended Complaint, Doc. No. 72 ¶¶ 16, 18. The CNL Income Funds sought to acquire both new and existing restaurant properties, which were leased primarily to operators of selected national and regional fast-food restaurant chains. Doc. No. 72 ¶ 29. Defendants Seneff and Bourne served as the General Partners (collectively the "General Partners") of the CNL Income Funds, along with CNL Realty Corporation; Seneff and Bourne also owned 50% of CNL Realty Corporation. Doc. No. 72 ¶¶ 22-25. Seneff and Bourne were also directors, stockholders[7] and creditors of CNL Restaurant Properties, Inc., a real estate investment trust ("REIT") that provided financial, real estate, and advisory services to operators of national and regional restaurant chains and invested in diversified restaurant-based real estate. Doc. No. 72 ¶¶ 22-23, 45. Plaintiffs allege that the General Partners were trying to merge CNL Restaurant Properties with U.S. Restaurant Properties, Inc. ("USRP"), and proposed the Income Funds contribute the equity to accomplish the merger; the

---

[4]The facts are either undisputed or read in the light most favorable to Plaintiffs as the party opposing the Motions to Dismiss.

[5]Plaintiff Robert Lewis owned 10 of the 60,000 units of CNL Income Fund IV. Doc. No. 72 ¶¶ 20, 30.4. Plaintiff Sutter Capital Management LLC ("Sutter Capital") is the successor-in-interest to Sutter Acquisition Fund, LLC ("SAF"), the named plaintiff in the Texas Action. Doc. No. 72 ¶ 16.

[6]CNL Income Fund Limited Partnerships consist of CNL Income Fund, Ltd. and CNL Income Fund II, Ltd. sequentially through CNL Income Fund XVIII, Ltd.

[7]Seneff owned 11% of CNL Restaurants' stock; Bourne owned 2.2%. Doc. No. 72 ¶¶ 67-68.

General Partners allegedly then undervalued the equity by $140 million and converted it to their benefit. Doc. No. 72 ¶¶ 3, 47, 49.

On January 16, 2004, the General Partners on behalf of the Income Funds reached an agreement in principle on a merger of the Income Funds into USRP. Doc. No. 72 ¶¶ 50. On August 9, 2004, when no other buyers emerged, CNL Restaurant Properties, Inc. and the Income Funds announced that they had entered into an "Agreement and Plan of Merger" with USRP (the "Merger"). Doc. No. 72 ¶ 51. The transactions involved in the Merger required the approval of the limited partners of the Income Funds and shareholders of the other parties.

On January 3, 2005, the parties to the Merger filed a Joint Definitive Proxy Statement (the "Proxy") that incorporated the Merger Agreements and provided information about the Merger. Doc. No. 72 ¶ 55. The plan was for CNL Restaurant Properties, Inc. to merge into USRP and USRP to be the surviving corporation; thus, CNL Restaurant Properties, Inc. would cease to exist. Doc. No. 72 ¶ 52(a). Each Income Fund would become a wholly-owned subsidiary of USRP's operating partnership. Doc. No. 72 ¶ 52(b). CNL Restaurant Properties stockholders' shares were to be converted into shares of USRP, and each unit in the Income Funds was to be converted into cash and shares of USRP stock. Doc. No. 72 ¶¶ 60, 64.

The Proxy contained four fairness opinions, including one by Wachovia Capital Markets, LLC, opining that the consideration to be received by the limited partners was "fair, from a financial point of view, to such holders." Doc. No. 72 ¶¶ 84-107; Ex. 4 (Proxy at H-4). Plaintiffs allege that the four fairness opinions were confusing and misleading about the adequacy of consideration to the Income Fund limited partners. Doc. No. 72 ¶¶ 84-107. The Proxy also advised the limited partners that the General Partners "may" have had potential conflicts of interest in the Merger, which Plaintiffs allege was also misleading. Doc. No. 72, Ex. 4 (Proxy at 21, 31-32, 133).

On February 25, 2005, a majority[8] of the limited partners approved the Merger[9]. Doc. No. 72 ¶ 57. CNL Restaurant Properties was merged with and into USRP, and the Income Funds ceased to exist. Doc. No. 72 ¶ 57. The surviving corporation was renamed Trustreet Properties, Inc. Doc. No. 72 ¶ 27-28. Two years later, in February 2007, Trustreet Properties, Inc. merged with and into FF-TSY Holding Company ("FF-TSY"), a subsidiary of GE Capital Corporation. Doc. No. 72 ¶ 28(b). Upon consummation of the merger with GE Capital Corporation, all Trustreet shareholders were cashed out of their investments; therefore, none of the former Income Fund limited partners own any interest in the surviving corporation or its successor. Doc. No. 72 ¶ 28(d).

## THE TEXAS LITIGATION

On January 5, 2005, two days after the Proxy was filed, but well before the consummation of the Merger on February 25, 2005, Plaintiffs filed a class action in state court in Dallas, Texas[10] (the "Texas action"). The General Partners moved to dismiss the case for lack of subject matter jurisdiction, asserting that Plaintiffs did not have standing to assert claims for breach of fiduciary duty directly because such claims were derivative[11]. Doc. No. 72 ¶ 10. On May 26, 2005, the Texas trial court entered judgment dismissing the claims without prejudice. Doc. No. 72 ¶ 10. Plaintiffs appealed and on May 29, 2007, the Dallas Court of Appeals affirmed the trial court's judgment. *See Lewis v. CNL Restaurant Properties, Inc.*, 223 S.W.3d 784 (Tex. App. 2007). Three months later, on August 2, 2007, Plaintiffs filed their proposed class action complaint in this Court. Doc. No. 1.

---

[8]Counsel represented at oral argument, without contradiction, that 94% of the limited partners approved the Merger. Doc. No. 92.

[9]The precise merger consideration is alleged in the Second Amended Complaint. Doc. No. 72 ¶¶ 59, 61, 74-75.

[10]Plaintiffs explained at oral argument and in their Response that they filed in Dallas because that is where USRP had its principal place of business, according to the Proxy. Doc. No. 81 at 9 n. 10.

[11]A derivative action is a cause of action brought by a stockholder to enforce a right of action that exists on behalf of a corporation. *Fox v. Prof'l Wrecker Operators of Fla., Inc.*, 801 So.2d 175, 179 (Fla. DCA 2001).

## ANALYSIS

On behalf of a proposed class of Income Fund limited partners, the Plaintiffs assert against the General Partners a claim for breach of fiduciary duty and wrongful self-dealing (Counts I and II); breach of the duty of disclosure (Count III), breach of the Partnership Agreement and the implied covenant of good faith and fair dealing (Count VIII). Against FF-TSY, the Plaintiffs allege claims for aiding and abetting the General Partners' breaches of fiduciary duty and the duty of disclosure (Counts IV, V, and VI); unjust enrichment (Count VII); and tortious interference with business relationships (Count IX). Plaintiffs also assert quasi-direct claims to recover damages for the conduct alleged in Counts I, II, IV and V (Count X). The crux of Plaintiffs' claims is that the limited partners of the respective Income Funds did not receive sufficient merger consideration for the value of the Income Funds' assets contributed the Merger. *See* Doc. No. 72 ¶¶ 1, 7, 73-75, 136(c), 136(h), 148(a), 148(d), 160-161.

The General Partners move to dismiss Plaintiffs' claims on the basis of issue preclusion and for lack of standing to assert a direct cause of action. FF-TSY similarly moves to dismiss the aiding and abetting claims against it that derive from Plaintiffs' claims against the General Partners, and the tort and equity claims made against it. For the reasons set forth below, it is respectfully **RECOMMENDED** that the Motions to Dismiss (Doc. Nos. 77, 79) be **GRANTED**.

### A. *Issue Preclusion*

The General Partners move to dismiss Plaintiffs' Second Amended Complaint on the basis of issue preclusion, arguing that this Court lacks subject matter jurisdiction because Plaintiffs lack standing to assert their claims under Florida law, as the Texas court has already decided, and the Texas decision bars relitigation of Plaintiffs' claims. The General Partners argue that Plaintiffs are estopped from relitigating the standing issue despite Plaintiffs' allegations in this Court of three

smaller breach of fiduciary duty counts in this case, compared to the single broad breach of fiduciary duty count Plaintiffs alleged in the Texas Action. While Plaintiffs acknowledge that this Court must give a state-court judgment the same preclusive effect as would be given that judgment under the law of Texas, Doc. No. 81 at 23, they argue issue preclusion does not apply to their claims because the Texas judgment was not a "final judgment"; there has been an intervening change in Florida limited partnership statutory law; and they assert new claims which were not fully and fairly litigated in the Texas litigation.

### 1. *Judgments on jurisdictional issues*

Under the doctrine of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The purpose of the doctrine is judicial finality. *See id.* The federal courts are required by the full faith and credit provision of 28 U.S.C. § 1738 (1982) to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)).

A party seeking to assert issue preclusion under Texas law must establish: (1) the issue sought to be litigated in the second action was fully and fairly litigated in the first action; (2) the issue was essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See, e.g., John G. & Marie Stella Kenedy Mem. Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *cf. Pantex Towing Corp. v. Glidewell*, 763 F.2d 1241, 1245 (11th Cir. 1985) (same elements under Federal law). The prior adjudication has preclusive effect even if it is erroneous. *See, e.g., Acree v. Air Line Pilots Ass'n.*, 390 F.2d 199, 203 (5th Cir. 1968); *Butler v. Cont'l Airlines*, 116 S.W.3d 286, 288 n. 4 (Tex. App. 2003).

Plaintiffs do not dispute that the same parties[12] in this case were previously "cast as adversaries" in the Texas litigation or that the standing issue (direct versus derivative claim) was an "essential" part of the judgment finding that Plaintiffs lacked standing in the Texas litigation. Instead, Plaintiffs' arguments are limited to a single requirement they urge is necessary for issue preclusion – whether the case was dismissed "with prejudice" in the Texas action. Plaintiffs argue that because the dismissal was "without prejudice" it was "not a final" judgment and cannot have preclusive effect. Plaintiffs cite a number of cases for the proposition that when a suit is dismissed without prejudice for lack of jurisdiction there is no decision on the merits and issue preclusion does not bar a subsequent action. Doc. No. 81 at 25 (citing "without prejudice" cases). The General Partners argue that it makes no difference that the Texas litigation was dismissed without prejudice because the dismissal based on a lack of standing forecloses subsequent litigation on the very same questions of fact and law that were litigated and necessarily decided by the original court in reaching the standing decision.

Plaintiffs' reliance on the phrase "without prejudice" is a red herring and ignores the preclusive effect of the Texas rulings on the narrow issue of standing. Plaintiffs argue very generally that dismissals for lack of subject matter jurisdiction are always "without prejudice" and therefore, not "final"; however, they neglect to address whether a dismissal *for lack of standing* in particular can have preclusive effect. The Court finds that it does. As the Supreme Court explained in *American Surety Co. v. Baldwin*, 287 U.S. 156, 166 (1932), "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues," and therefore a decision may have preclusive effect even if the decision is not made "on the merits" of the entire case. *Id.* at 166. The Fifth Circuit described

---

[12]Robert Lewis is the named plaintiff in both actions. Doc. No. 79, Ex. 1 (Tex. Pet. ¶ 10), with Doc. No. 72 ¶ 20. As successor to "all of SAF's interests and liabilities" (Doc. No. 72 ¶ 16), Sutter Capital is in privity with SAF for purposes of issue preclusion.

this type of preclusion as "preclud[ing] a new adjudication of the question actually decided, although it does not bar the cause of action." *Estevez v. Nabers*, 219 F.2d 321, 324 (5th Cir. 1955).

For issue preclusion to apply to a jurisdictional issue, it is not necessary that the dismissal be "with prejudice." As other courts have pointed out, dismissals for lack of jurisdiction should always be *without* prejudice "because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims." *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1218 (10th Cir. 2006) (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot also be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render.")). As the court in *Brereton* explained:

> Courts have acknowledged two important analytical reasons for requiring that a dismissal on jurisdictional grounds be without prejudice. First, dismissal with prejudice is inappropriate because such a dismissal may improperly prevent a litigant from refiling his complaint in another court that does have jurisdiction. Second, and perhaps more essentially, once a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim.

*Brereton*, 434 F.3d at 1216-17 (citations omitted). Although any dismissal for lack of subject matter jurisdiction, is necessarily "without prejudice," it does not necessarily follow that the dismissal, if the issue is standing, is not "final" or preclusive.

Plaintiffs argue in a very literal sense that because that jurisdictional dismissals are "without prejudice" they are not final or preclusive. The "accepted modern view" is "that issue preclusion does not depend on an earlier adjudication of the substance of the underlying claim; even adjudications such as dismissal for lack of jurisdiction or failure to join an indispensable party, which are expressly denominated . . . as not being 'on the merits,' are entitled to issue preclusive effect." *In re Sonus Networks, Inc, Shareholder Derivative Litigation*,  499 F.3d 47, 59 (1st Cir. 2007) (rejecting

plaintiff's argument that the phrase "on the merits" posed an obstacle to according any preclusive effect to the state court's dismissal).

> The authors of the Federal Practice and Procedure Treatise explain:
>
> Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question. If it seems necessary to rebut the sophistic argument that preclusion cannot arise from the judgment of a court that admits to a lack of jurisdiction, comfort may be found in the notion that a court has jurisdiction to determine its own jurisdiction. The provision in [Federal Rule of Civil Procedure] 41(b) that dismissal for lack of jurisdiction does not operate as a adjudication on the merits is not intended to change this result.

18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4436 at 154. (2002). There is abundant, well-reasoned case law applying *issue* preclusion (as opposed to claim preclusion) to lack of subject matter jurisdictional decisions made by the court in a prior decision, without regard to whether the decision is characterized as "with prejudice" or "on the merits." *See, e.g., In re Sonus Networks,* 499 F.3d at 59; *Brereton*, 434 F.3d at 1219 (even a dismissal without prejudice will have a preclusive effect *i.e.*, issue preclusion, on the standing issue in a future action); *Muñiz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000) (dismissal for lack of subject matter jurisdiction); *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000)(dismissal for lack of standing); *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) (dismissal for lack of subject matter jurisdiction); *Okoro v. Bohman,* 164 F.3d 1059, 1062-64 (7th Cir. 1999) (dismissal of *forma pauperis* suit as frivolous); WRIGHT & MILLER § 4436.

There is precedent from the Middle District and the former Fifth Circuit that applies issue preclusion to a standing issue, even where there is not a decision "on the merits" of the case as a whole. In *White v. School Board of Hillsborough County*, Judge Whittemore held that issue preclusion barred a plaintiff from relitigating the issue of standing in the federal case before him,

where the same plaintiff had previously been held to lack standing to bring claims on behalf of a charter school she operated. 2007 WL 2021829, *3 (M.D. Fla. July 11, 2007), *aff'd*, 2009 WL 174944 (11th Cir. Jan. 27, 2009) (unpublished). Judge Whittemore held that the plaintiff had alleged materially identical facts and claims in the second case, attempting to assert standing to bring constitutional claims that belonged to the charter school rather than to her personally, and her claims were barred in the second suit by issue preclusion. *Id.* (dismissing claims in second case where plaintiff's standing was previously determined after Plaintiff had a full and fair opportunity to litigate the issue).

The former Fifth Circuit held in *Estevez v. Nabers*, 219 F.2d 321 (5th Cir. 1955)[13] where the plaintiff's first suit was dismissed for lack of jurisdiction, even though the dismissal was not "on the merits," the decision precluded a new adjudication of the "question actually decided" even though it did not bar the entire cause of action. *Id.* at 324. The court cited the Restatement of Judgments in calling the effect of the "non-merits judgment a direct estoppel." *Id.*; *see also Hooker v. Federal Election Commission,* 21 Fed.Appx. 402, 405-406 (6th Cir. 2001) (unpublished) (issue preclusion applied where plaintiff was attempting to reassert the same claim with unchanged facts supporting his standing as a potential candidate); *Int'l Primate Prot. League v. Adm'rs of the Tulane Educ. Fund*, No. 91-2966, 1992 WL 329555, *3 (E.D. La. Nov. 2, 1992) (precluding claim to bar litigants who had been found to lack standing in a prior suit from reasserting the same claim in a subsequent suit), *aff'd*, 22 F.3d 1094 (5th Cir.1994) (table).

The shareholder derivative case of *In re Sonus Networks, Inc. Shareholder Derivative Litigation* – in which the First Circuit held that a state court judgment dismissing a derivative suit for

---

[13]All decisions of the United States Fifth Circuit Court of Appeals decided before October 1, 1980 which have not been overruled by the United States Eleventh Circuit Court of Appeals are binding on federal courts situated in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

procedural defects had issue preclusive effect in federal litigation on the same issue – is on point. 499 F.3d 47 (1st Cir. 2007). In response to a negative earnings announcement, a group of shareholders brought a derivative suit in state court against the corporation's officers and directors alleging misconduct and negligence; and, within a few days, other shareholders filed similar derivative suits in federal court, and the federal suits were consolidated. *Id.* at 53-54. The state court dismissed the derivative suit before it for the shareholders' failure to adequately plead that they had made a demand on the directors or the futility of such demand in compliance with state class action rules; the shareholders appealed to the state appellate court, and later withdrew the appeal based on actions taken by the Securities and Exchange Commission. *Id.* at 54-55. The later-filed federal complaint similarly alleged that the plaintiffs had not made demand on the directors before suit because it would have been futile; the director-defendants moved to dismiss on the ground that the dismissal in the state suit barred the federal suit as well. *Id*. at 56. The federal district court granted the motion to dismiss based on issue preclusion, and the First Circuit affirmed, holding that the state court dismissal was "on the merits" in the sense that it was entitled to issue-preclusive effect, even if it did not preclude other claims by the shareholders or bar the suit completely, as would claim preclusion. *Id*. at 62.

## 2. *Application of Texas standing decision*

Turning to whether the Texas courts' rulings have preclusive effect on Plaintiffs' standing in this case, the Court finds that they do. On January 5, 2005, two days after the Proxy was filed, Plaintiffs filed a class action in the 116th District Court, Dallas County, Texas, against the General Partners and others. Doc. No. 41[14], Ex. 30. In that litigation, Plaintiffs pled against the General

---

[14]The presiding District Judge Antoon granted in part Defendants' Motion to Take Judicial Notice of Record from Prior Texas Class Action (Doc. No. 41); for the purposes of ruling on Defendants' motion to dismiss, he would take judicial notice of the fact that the record exists, the trial court's final order of dismissal, and the appellate opinion to establish that the judicial act was taken. Doc. No. 53. He granted leave for Defendants to request the Court take judicial notice of other documents in the record when appropriate. Doc. No. 53. The Exhibit numbers are those as assigned in the Index to the Motion, Doc. No. 41-2 and do not necessarily accord with "part" assigned to Doc. No. 41 in CM/ECF.

Partners a breach of fiduciary claim and a breach of contract claim. Doc. No. 41, Ex. 30. As they conceded at oral argument in this Court, Plaintiffs did not move to enjoin the Proxy vote or the Merger, and they did not seek other equitable relief prior to the closing of the Merger on February 25, 2005, apparently because they have been unsuccessful in other cases in obtaining such relief.

In the Texas trial court, the General Partners filed motions challenging the limited partner-Plaintiffs' standing to bring directly suit against them, and on May 26, 2005, the trial court dismissed Plaintiffs' claims "without prejudice for lack of subject matter jurisdiction because Plaintiffs' claims are derivative in nature and they lack standing to assert them"[15]. Doc. No. 41, Ex. 10 at 3 (Texas Trial Court Final Judgment and Order). Plaintiffs subsequently filed an appeal in the Texas Court of Appeals for the Fifth District in Dallas ("Dallas Court of Appeals") alleging "the single point of error" that the trial court erred in finding Plaintiffs had no standing. *Lewis v. Seneff*, 223 S.W.3d 784, 788 (Tx. Ct. App. 2007); *see also* Doc. No. 41, Ex. 1. On May 29, 2007, the three-judge appellate panel affirmed the trial court's dismissal of Plaintiffs' complaint for lack of subject matter jurisdiction. *Lewis*, 223 S.W.3d at 788. The appellate court reviewed the trial court's ruling de novo, and determined that the separate and distinct injury test was the law in Florida, and under this test, Plaintiffs' claims were derivative. *Id*. at 786-88. The Dallas Court of Appeals analyzed at length Florida law on the issue of derivative and direct actions, to hold:

> A derivative action is a cause of action brought by a stockholder to enforce a right of action that exists on behalf of a corporation. *Fox v. Prof'l Wrecker Operators of Florida, Inc*., 801 So.2d 175, 179 (Fla. DCA 2001). A derivative action seeks redress for an injury suffered by the corporation or the stockholders generally. *Id.* By contrast, a direct action seeks redress for an injury suffered directly by the stockholder that is separate from any injury sustained by the other stockholders. *Id; AmSouth Bank v. Wynne*, 772 So.2d 574, 575 (Fla. DCA 2000).

---

[15] Plaintiffs' claims were also dismissed "for the other reasons set forth in the Plea and Supplemental Plea to the Jurisdiction." Doc. No. 41, Ex. 3 at 3.

Florida employs the separate and distinct injury test to determine whether a stockholder may bring a direct action. *Alario v. Miller*, 354 So.2d 925 (Fla. Dist. Ct. App. 1978). Under the separate and distinct injury test, the injury must be sustained directly by the stockholder and the injury must be separate and distinct from any injury sustained by other stockholders. *Id.* at 926. The separate and distinct injury test applies to partnerships. *See Walco Investments, Inc. v. Thenen*, 947 F.Supp. 491, 498 n. 4 (S.D. Fla. 1996).

The first amended petition alleged injuries to the limited partners generally. It is a class action lawsuit asserting that the rights of all the limited partners under the partnership agreement were violated. Lewis stated in the first amended petition: "[b]eginning in 2000, the CNL Defendants began utilizing their control and influence over the CNL Income Funds to bolster the operations of CNLRP, continuing their illusion of uninterrupted profit of CNLRP at the expense of CNL Income Funds." "The merger was the culmination of a scheme put into action by the CNL Defendants to bail themselves out of a financial predication that they created. Over the past five years, the CNL Defendants utilized the CNL Income Funds in a manner to benefit themselves and, specifically, CNLRP."

*Lewis*, 223 S.W.3d at 786. The Dallas Court of Appeals thoroughly considered, and rejected, Plaintiffs' arguments that their claims were direct, not derivative:

Appellants contend that their claims are direct because the consideration for the merger was conveyed directly to the shareholders. However, the procedure through which the merger consideration is paid is not determinative under the separate and distinct injury test. Appellants urge this Court to follow the test set forth by the Delaware Supreme Court. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc*., 845 A.2d 1031 (Del.2004). The test set forth in *Tooley* provides that whether a claim is direct or derivative depends on: (1) who suffered the alleged harm; and (2) who would receive the benefit of any recovery. *Id.* at 1035. Appellants contend that because they received the consideration they suffered the harm and not the limited partnerships. Florida has not adopted the test set forth in *Tooley* and, therefore, we decline to follow it.

Appellants contend that they have met their burden of alleging a direct claim even under the separate and distinct injury test. Relying on non-Florida cases, they contend that challenges to the adequacy of merger consideration are direct claims. In *In re Real Estate Assoc. Ltd. P'ship Litig.*, 223 F. Supp.2d 1109 (C.D. Cal. 2002), the court held that limited partners could bring a direct action where the proceeds from the sale of the company were distributed directly to them. No Florida court has adopted the reasoning in this case and the holding conflicts with the separate and distinct injury test. In *Sturm v. Marriott Marquis Corp*., 85 F. Supp.2d 1356 (N.D. Ga. 2000), the court held that the plaintiff's merger claim was both derivative and direct. Under Florida law, however, if a claim can be characterized as both derivative and direct, it must be brought as a derivative action. *See Hodges v. Buzzeo*, 193 F. Supp.2d 1279,

1288 (M.D. Fla.2002). The court in *Everest Investors 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 8 Cal. Rptr.3d 31 (Cal. Ct. App. 2003) held that a merger claim was a direct action. In doing so, however, the court relied upon a California case that expressly disapproved of the separate and distinct injury test. *Id.* at 428-29, 8 Cal. Rptr.3d 31. Appellants cite two other cases for the proposition that claims based upon false and misleading proxy disclosures are direct actions. *See Schwartzman v. Tenneco Mfg. Co.*, 319 F.Supp. 1278 (D. Del. 1970); *In re Cencom Cable Income Partners, L.P. Litig.*, 2000 WL 130629 (Del. Ch. 2000). These cases are inapplicable because appellants did not assert any causes of action based upon a false and misleading proxy statement.

Limited partners are not directly injured when they are damaged only to the extent of their proportionate interest in the partnership. *See Litman v. Prudential-Bache Properties, Inc.*, 611 A.2d 12, 16 (Del. Ch. 1992). *Litman* was a pre-*Tooley* case applying the separate and distinct injury test. The limited partners in *Litman* complained that the general partners breached their fiduciary duties by inadequately monitoring their investments and by placing their interests in fees above the interests of the limited partners. *Id.* As a result, the limited partners complained that they received less money for the shares of stock. *Id.* In *Litman*, the court held that the "defendants' misconduct damaged plaintiffs only to the extent of their proportionate interest in the partnership." *Litman*, 611 A.2d at 16. In holding that the limited partners' claims were derivative, the court concluded that "this was not a direct injury to the limited partners or one that existed independently of the partnership." *Id.*

Like the plaintiffs in *Litman*, appellants complain that they received less money for the shares of stock because of the alleged misconduct of the general partners. The fact that the loss was not realized until the merger was completed does not convert the case into a direct action. *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 222 (5th Cir.1994). In *Parker & Parsley*, unitholders in a partnership filed suit complaining of a proposed "roll-up transaction" where their interests were to be exchanged for stock in a newly formed corporation. The plaintiffs alleged that upon liquidation they will receive less stock in the new corporation because of conflicts of interest and self-dealing involved in the transaction. *Id.* at 215. The court held that the plaintiffs alleged a collective injury to the partnership. "That the disparities will eventually be passed on to the PDP unitholders upon liquidation of PDP does not commute the causes of action into direct claims." *Id.* at 222. As in *Parker & Parsley*, we conclude that the fact that the injuries were not realized until the merger was completed is not determinative of the classification of their claims as derivative or direct.

Another case we find instructive is *In re J.P. Morgan Chase & Co.*, 2005 WL 1076069 (Del. Ch. Apr.29, 2005). In *J.P. Morgan*, shareholders of J.P. Morgan filed a class action contesting J.P. Morgan's buy out of Bank One. The class complained that J.P. Morgan paid a premium over the market share for Bank One. The class alleged breaches of fiduciary duty. J.P. Morgan moved to dismiss on the ground that the shareholders' claims were derivative, not direct. The shareholders claimed they were

harmed directly because "the stockholders of the pre-merger [J.P. Morgan] now have less of a stake in the post-merger [J.P. Morgan]." *Id*. at 6. In holding that the shareholders' claims were derivative, the court noted, "[t]he plaintiffs, if they were harmed at all, were harmed indirectly and only because of their ownership in JPMC." "Any alleged dilution was a harm suffered by all pre-merger [J.P. Morgan] stockholders and, consequently, [J.P. Morgan] itself." *Id.* The same is true for appellants. Any harm resulting from the merger was only because of their ownership in the CNL Income Funds. The alleged harm was suffered by all pre-merger CNL Income Fund limited partners.

The alleged harm asserted by the limited partners was suffered by all the pre-merger limited partners. Again, under the separate and distinct injury test, the shareholder must suffer an injury that is separate and distinct from the other shareholders. The facts of this case do not pass the separate and distinct injury test. A direct action is not allowed when the limited partners are similarly situated. *See Falic v. Legg Mason Wood Walker, Inc.*, 347 F.Supp.2d 1260, 1270 (S.D. Fla. 2004). These facts do not satisfy the separate and distinct injury test. Accordingly, we conclude the trial court did not err in granting the plea to the jurisdiction. We overrule the limited partners' point of error and affirm the trial court's order granting the plea to the jurisdiction.

*Lewis*, 223 S.W.3d at 787-88.

The court ultimately held that the limited partners were not directly injured, but only damaged to the extent of their proportionate interest in the partnership and the alleged harm was suffered by all limited partners; therefore, claims were derivative rather than direct and were properly dismissed for lack of standing. *Id.* at 787-88. Plaintiffs chose not to pursue an appeal to the Texas Supreme Court. Thus, the Dallas Court of Appeals decision is final[16] for purposes of issue preclusion, and Plaintiffs cannot reassert the claims they previously asserted in the Texas courts, which were determined to be derivative claims under Florida law: breach of contract, breach of fiduciary duty, and for an accounting. *Id.* at 785.

### 3. *Claims allegedly not asserted in prior Texas litigation*

Plaintiffs assert that, even if issue preclusion bars certain claims raised in the Texas litigation, they have asserted new and different claims which should not be barred by the Texas holding. They

---

[16]Tex. R. App. P. 53.

concede that they have re-alleged breach of fiduciary duty claims in Counts I, II, IV, and V of the Second Amended Complaint (Doc. No. 81 at 13 (at Brief p. 2)), which would thus be precluded, but they argue that they have alleged new claims "never addressed by the Texas courts," *i.e.*, for breach of the duty of disclosure (and aiding and abetting breach of the duty of disclosure), and breach of the limited partnership agreement[17] (Counts III, VI, and VIII).

The General Partners argue that Plaintiffs' breach of the duty of disclosure claim is based on the alleged misleading proxy disclosures and is not a separate claim, but a variation of the breach of fiduciary duty, which the Texas courts previously found must be brought as a derivative action. The General Partners also argue that Plaintiffs' claim for breach of the limited partnership agreements is also a derivative claim because it alleges, in substance, that the General Partners breached a contractual fiduciary duty in the agreement by failing to obtain sufficient merger consideration for the limited partners.

### a. Breach of duty of disclosure for a materially false and misleading Proxy statement

Plaintiffs characterize too narrowly the Texas court's holding, elevating form above substance. The Dallas Court of Appeals held that Plaintiffs, as limited partners, could not bring direct claims under Florida limited partnership law (as it then existed) for claims that the General Partners had breached fiduciary duties in providing insufficient consideration to the limited partners. *Lewis*, 223 S.W.3d at 787-88. Plaintiffs have done nothing more in the Second Amended Complaint than repackage and re-title their previous breach of fiduciary duty claims into "breach of contract" and "breach of disclosure" claims.

The Dallas Court of Appeals analyzed the central issue of whether Plaintiffs "ha[d] met their burden of alleging a direct claim even under the separate and distinct injury test," and held that

---

[17] Plaintiffs also allege claims for unjust enrichment (Count VII), tortious interference with business relationships (Count IX) and quasi-direct claims (Count X), which the Court addresses *infra*.

Plaintiffs had not.  *Lewis*, 223 S.W.3d at 787.  "[A]ppellants complain that they received less money for the shares of stock because of the alleged misconduct of the general partners. . . Any alleged dilution was a harm suffered by all pre-merger [corporate] stockholders and, consequently, [the corporation] itself."  *Id*. (analogizing to the *J.P. Morgan* case).  The Dallas court held that the same was true for Plaintiffs because "[a]ny harm resulting from the merger was only because of their ownership in the CNL Income Funds.  The alleged harm was suffered by all pre-merger CNL Income Fund limited partners. . .  The facts of this case do not pass the separate and distinct injury test.  A direct action is not allowed when the limited partners are similarly situated."  *Id*. at 788.

No matter how Plaintiffs currently choose to characterize their claims, the fact remains that they allege breach of the General Partners' fiduciary duty to disclose to *all* of the limited partners – for this claim, non-misleading proxy information – and  under Florida law, such a duty to disclose runs to the limited partnership.  Such a claim for breach of the duty of disclosure in circulating a misleading proxy must be brought as a derivative action, because as the Dallas Court held, "the alleged harm was suffered by all pre-merger CNL Income Fund limited partners."  Plaintiffs argue that the Dallas Court of Appeals specifically stated that Plaintiffs "did not assert any causes of action based upon a false and misleading proxy statement," thus, they argue, their breach of the duty of disclosure claim is not simply a "re-labeling" but a new claim not asserted previously in the Texas lawsuit.

The Dallas Court of Appeals' opinion distinguished Plaintiffs' citation to two cases that allowed a direct action by a limited partner based on false and misleading proxy disclosures.  *Lewis*, 223 S.W.3d at 787.  The court's decision in that regard makes no difference – it did *not* hold that its decision would have been any different if Plaintiffs had asserted a false proxy claim, merely that the court did not have to address it because no misleading proxy claims had been asserted.  Moreover,

Plaintiffs cited two *Delaware* cases[18] and the court was very clear in holding that the Florida courts had not adopted the reasoning of the Delaware case of *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). Plaintiffs failed to persuade the Dallas Court of Appeals that Florida courts had adopted the test in *Tooley*, and this Court is bound by that earlier ruling. *See Butler v. Cont'l Airlines*, 116 S.W.3d 286, 288 n.4 (Tex. App. 2003) (reconsideration of issue of jurisdiction precluded even if the first judgment was erroneous).

Even if the Dallas Court of Appeals' prior *Lewis* decision does not foreclose Plaintiffs' ability to bring a duty to disclose claim directly, Florida limited partnership law existing at the time the claim arose in January 2005[19] would have required that the claim be brought as a derivative claim, rather than as a direct claim. *See Belcher v. Schilling*, 309 So. 2d 32, 33-34 (Fla. 3rd DCA 1975) (stockholders had standing to bring derivative action where they had been damaged by misleading proxies), *cert. denied*, 318 So.2d 404 (Fla. 1975).

As with the breach of fiduciary duty claims, Plaintiffs' claim for breach of the limited partnership agreements also must be alleged as a derivative claim. *See, e.g., Duke & Benedict, Inc. v. Wolstein,* 826 F.Supp. 1413, 1415 (M.D. Fla. 1993) (limited partner's action for breach of limited partnership agreement against general partners was a derivative action in which limited partnership was indispensable party); *Golden Tee, Inc. v. Venture Golf Schools, Inc.*, 969 S.W.2d 625, 629-30 (Ark. 1998) (holding that allegations for breach of partnership agreement for loss of investment

---

[18]One of the two cases, *In re Cencom Cable Income Partners, L.P. Litig.*, 2000WL 130629 (Del. Ch. 2000) (unpublished), has been widely criticized and distinguished as applying only to the limited situation where the partnership is in "liquidation and *all* non-defendant partners in the resulting litigation constitute a uniform class of limited partners." *Winer Family Trust v. Queen*, 503 F.3d 319, 339 (3d Cir. 2007) (emphasis in original). The other case, *Schwartz man v. Tenneco Mfg. Co.*, 319 F. Supp. 1278, 1279 (D. Del. 1970), is also inapposite because the claims at issue were brought exclusively for federal securities law violations (§§ 14(a) and 10(b) of the Securities and Exchange Act of 1934), and Plaintiffs have not asserted any claims under the federal securities laws.

[19]The Income Funds were dissolved before the Revised Uniform Limited Partnership Act took effect, at the earliest, in Florida on January 1, 2006. The Court addresses Plaintiffs contentions regarding the viability of their claims under the RULPA below.

capital and diminishment of capital account were injuries to the limited partnership, and must be brought as derivative claims).

Plaintiffs' claims against the General Partners for breach of the limited partnership agreements for failing provide the limited partners with sufficient merger consideration must be asserted as derivative claims, which Plaintiffs failed to do. Because the limited partnerships are no longer in existence, even if Plaintiffs' claims for breach of the limited partnerships agreements were not barred by issue preclusion, it is impossible to bring such claims either now or when the litigation was filed in this Court in 2007.

### 4. Intervening change in Florida law - RULPA

Plaintiffs baldly assert that, although "Florida courts have not addressed the *Tooley* decision" – allowing direct actions – this Court should find that the *Tooley* decision from Delaware would be adopted by the Florida Supreme Court, if presented with the question[20]. Plaintiffs argue that Florida case and statutory law is guided by Delaware corporate law precedent, so therefore "it is an unassailable principle that limited partners have direct claims for breach of fiduciary duty and breach of contract against general partners who engage in self-dealing during a merger." Plaintiffs' only basis for their bald assertion that Florida courts in January 2005 would have followed *Tooley* if given the opportunity is their citation to the relatively new Revised Uniform Limited Partnership Act (RULPA), enacted in June 2005, which did not take effect until January 1, 2006. *See* Fla. Stat. § 620.1101 et seq. The Court declines to overrule the "separate and distinct injury test" of *Alario v. Miller*, 354 So.2d 925 (Fla. DCA 1978), adopt the *Tooley* test advocated by Plaintiffs, and apply the new test to limited partnerships in Florida. As recently as April 2008, the presiding judge in this

---

[20]*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) (A stockholder who is directly injured . . . does retain the right to bring an individual action. . . . Such a claim is distinct from an injury caused to the corporation alone.)

case, District Judge Antoon, applied the "separate and distinct injury" test of *Alario* in holding that shareholders in an allegedly defrauded corporation seeking to bring a class action lacked standing to bring a direct action against the third-party. *Badger v. Southern Farm Bureau Life Ins. Co.*, Case No. 6:06-cv-637-Orl-28KRS, 2008 WL 1884887, *12 (M.D. Fla. 2008) (citing *AmSouth Bank v. Wynne*, 772 So.2d 574 (Fla. 1st DCA 2000), applying *Alario* distinction between direct and derivative claims). As recently as November 2008 and February 2009, Florida appellate courts have cited *Alario* as the prevailing definitive case on derivative versus direct actions. *See Angelina v. Santa Barbara Enterprises, LLC*, 2 So.3d 1100, 1104-05 (Fla. 3d DCA 2009) (claim by 50% owner of corporation would have to be brought as derivative action against other 50% owner); *Chaul v. Abu-Ghazaleh*, 994 So.2d 465, 467 (Fla. 3d DCA 2008) (holding that shareholders had no standing to bring a direct action for injuries allegedly suffered by the corporation; shareholders could not sue directly for the corporate injury where their only claim was that the value of their investment was diminished); *see also Gonzalez ex rel. Colonial Bank v. Chillura*, 892 So.2d 1075, 1078 (Fla. 2d DCA 2004) (quoting from *Alario* as the definitive case on derivative actions).

The Court has not found any Florida state or federal case that even considered or discussed the *Tooley* decision. And while the RULPA has a provision that creates standing for direct actions *prospectively from its effective date* by limited partners, the Act is silent on the standing of limited partners to sue a general partner in those limited partnerships which ceased to exist prior to RULPA's effective date. Accordingly, even if RULPA indicates the Florida Legislature's general intention to create an new test for standing for a direct action for limited partners, the Court cannot *ex post facto* retroactively create such standing for a limited partner to sue a limited partnership that had ceased to exist before the RULPA took effect. The 2005 RULPA's test of standing is in § 620.2001, which does not use the same language as *Tooley*, and the test in § 602.2001 is undoubtedly the one that the

Florida courts will use to determine whether limited partners have standing to assert claims against the general partners, beginning with its effective date.

The pertinent part of § 602.2001 reads:

> (1) Subject to subsection (2), a partner may maintain a direct action against the limited partnership or another partner for legal or equitable relief, with or without an accounting as to the partnership's activities, to enforce the rights and otherwise protect the interests of the partner, including rights and interests under the partnership agreement or this act or arising independently of the partnership relationship.

> (2) A partner commencing a direct action under this section is required to plead and prove *an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership.*

> (3) The accrual of, and any time limitation on a right of action for a remedy under this section is governed by other law. A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.

Fla. Stat. § 620.2001 (emphasis added). The test under § 602.2001 is whether the partner has plead "an actual or threatened injury *that is not solely the result of an injury* suffered or threatened to be suffered by the limited partnership." Fla. Stat. § 620.2001(2)[21]. However, the Court need not reach the question of whether Plaintiffs have alleged an "injury that is not solely the result of an injury suffered" by the limited partnership sufficient to bring a direct claim because, under subsection (3) "the time limitation on a right of action for a remedy under this section is governed by other law," *i.e.*, § 602.2204, which is entitled, "Application to existing relationships."

Plaintiffs cannot belatedly bring a claim against the General Partners because the Income Fund Limited Partnerships ceased to exist (in 2005) before the effective date of the RULPA in Florida. RULPA governed only limited partnerships *formed* after January 1, 2006 or limited partnerships formed before January 1, 2006 that elected to be subject to RULPA. It is undisputed that the Income Fund Limited Partnerships were formed well before January 1, 2006 and did not elect to be governed

---

[21]At oral argument, when the Court asked Mr. Chimicles if there was any other basis than section § 602.2001(2) that cured the standing problem, he replied there was not. Doc. No. 92 at 64.

by RULPA. All limited partnerships existing in Florida became subject by default to RULPA on January 1, 2007; however, the Income Funds had ceased to exist in early 2005. Under the previous version of the Florida Revised Uniform Limited Partnership Act, in effect at the time the Income Funds merged with USRP, the Income Fund Limited Partnerships ceased to exist when the merger became effective. Fla. Stat. § 620.204 (repealed 2005).

Plaintiffs argued at oral argument that they were filing a brand new case in Florida, which they were entitled to do under the statute of limitations, and the 2005 RULPA gave the limited partners "the right" to bring a direct action. Plaintiffs cannot rely on the "savings clause" of § 620.2205 which states: "This act does not affect an action commenced, proceeding brought, or right accrued before this act takes effect" because, as they argue in their brief, "Plaintiffs' right to maintain a direct action accrued . . . on January 1, 2006, and not before." Plaintiffs' counsel argued:

> [T]he harm here was caused by the defendants' breach of fiduciary duty. And it was caused at a time when the transaction took place. . . . [RULPA] in the savings clause doesn't say anything about its not being applicable to transactions that predated its enactment. It could have said that. All it says is that it doesn't apply to a right that accrued. Well, in this case, the right is, in a sense, the standing of the limited partner to be able to bring the action. The defendants were successful in Texas, persuading that court that we had no right to bring the action. That was their position and they succeeded in that position. But that's certainly not the case now. Now we're saying that [RULPA] 2005 made it possible, enabled a limited partner to initiate an action directly. And with that came the accrual of the right.
>
> Now the cause of action – a right and a cause of action are two very different things. A cause of action is something which existed since time immemorial under breach of fiduciary law here in Florida.
>
> If there was a breach by defendants, it occurred at the time of the merger transaction. and that's when a cause of action may have arisen. But, no one had a right, according to these defendants, to bring an action to remedy that right. Or to bring that cause of action. . . . This is a situation where the defendants are sitting on both sides of the table and they're saying to the limited partner, no, there's no direct cause of action, so you're out of court on a direct claim. And, oh, by the way, these entities are going out of business, they're going to terminate, so there's no derivative right, because there's no entity here to bring that derivative right. . . . [This situation] leaves [the limited partners] without rights and without remedies.

Doc. No. 92 at 70-72.

However, nowhere in the 2005 RULPA did limited partners have the retroactive right to bring a direct action against a limited partnership that had ceased to exist before the effective date of the Act. Moreover, Plaintiffs did have recourse. They could have brought a derivative action rather than a direct action at the time they filed suit in Texas in 2005, or they could have filed a derivative action for violation of the federal securities laws for the allegedly misleading proxy, or they could have sought to enjoin the merger in the nine months between the time it was announced in mid-2004 to the time of the actual merger in February 2005. Plaintiffs opted to file a direct action on behalf of the class of limited partners, an option for which they did not have standing and which has not been recognized by courts applying Florida law.

## CLAIMS AGAINST FF-TSY, HOLDING COMPANY II, INC.

### A. *Aiding and abetting claims*

Plaintiffs allege against FF-TSY claims for aiding and abetting breaches of fiduciary duties for negotiating and implementing a self-dealing merger (Count IV); and causing the limited partners to be paid unfair merger consideration (Count V). FF-TSY moves to dismiss these claims, arguing that issue preclusion bars re-litigation of such claims as direct claims, the Texas courts having already decided that such claims must be brought as derivative claims under Florida law. The Court agrees that issue preclusion dictates such claims must be brought as derivative claims. *See Chaul v. Abu-Ghazaleh* , 994 So.2d 465, 467 (Fla. 3d DCA 2008) (dismissing shareholders' direct claims for failure to bring them as derivative claims, and all other claims, including aiding and abetting claims). Plaintiffs also allege against FF-TSY a claim for aiding and abetting a breach of the duty of disclosure for the allegedly false and misleading proxy statement (Count VI). Plaintiffs have brought all of the

aiding and abetting claims as direct claims, which are barred, as explained in great detailed *supra*. The aiding and abetting claims against FF-TSY are due to be dismissed.

## B. Unjust enrichment (Count VII)[22]

Plaintiffs allege FF-TSY was unjustly enriched when it failed to pay the full price for what it received; they argue it is inequitable to allow FF-TSY to retain the difference between what was conferred (the higher value of the Income Funds) and what was given (the lesser amount of the merger consideration). Doc. No. 81 at 55. Under Florida law, the elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Merkle v. Health Options, Inc.*, 940 So.2d 1190, 1199 (Fla. 4th DCA 2006) (citing *Hillman Construction Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994)). FF-TSY moves to dismiss Plaintiffs' unjust enrichment claim, arguing that unjust enrichment is a quasi-contractual remedy which courts impose in the absence of a written contract to prevent the unjust retention of a benefit by a party, and in this case, there was a written merger agreement. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007); *see also American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy.") (Hodges, J.); *Kovtan v. Frederiksen*, 449 So.2d 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract [through a claim for unjust enrichment] where an express contract exists concerning the same subject matter.").

---

[22]FF-TSY also moves for dismissal of Plaintiffs' unjust enrichment and tortious interference claims, arguing that the Texas courts have already decided that such claims, which allege an injury common to all limited partners, must be brought as derivative actions.

Plaintiffs concede that an unjust enrichment count will fail if an express contract exists,[23] however, they argue that the existence of the Merger Agreement between USRP and the Income Funds does not require dismissal because the *limited partners* – as opposed to the limited partnership – were not parties to the Merger Agreement. Survival of Plaintiffs' unjust enrichment claim turns on their erroneous theory that there is no written agreement to which the limited partners are bound. Once again, Plaintiffs ignore that the limited partners' recovery is proportional and therefore derivative; the recovery, if any, would belong to the Income Fund Limited Partnerships as a whole. The Income Fund limited partnerships were indisputably parties to the Merger Agreement; thus, a written contract did exist between the parties and an unjust enrichment claim is foreclosed. Because the consideration Plaintiffs received was the subject of a written merger agreement, the unjust enrichment claim must be dismissed. *See, e.g., Corn v. Greco*, 694 So. 2d 833, 834 (Fla. 2d DCA 1997) (unjust enrichment relief could not be awarded to lessors of property in rent dispute where the rights of the parties were described in written contract)*; Garcia v. Cosicher*, 504 So. 2d 462, 463 n.2 (Fla. 3d DCA 1987) (architect could not recover for fees on a *quantum meruit* theory in light of express contract between the parties); *cf. Harger v. Price*, 204 F. Supp. 2d 699, 710 (S.D. N.Y. 2002) (minority partner who alleged majority partners' cancellation of his shares gave each of them a larger share of aggregate merger consideration did not state a claim against surviving corporation because the merger consideration went to the majority shareholders). Plaintiffs cite no cases to the contrary, and the cases Plaintiffs do cite are inapposite.

### C. Tortious interference (Count IX)

---

[23]Plaintiffs cite *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.,* 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005), and *Mobil Oil Corp. v. Dade County Esoil Management Co., Inc.*, 982 F.Supp. 873, 880 (S.D. Fla. 1997) ("It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails").

Plaintiffs allege in the Second Amended Complaint that FF-TSY tortiously interfered in Plaintiffs' business relationship with the General Partners by inducing the General Partners to abandon their fiduciary duties to the limited partners "in order to join a scheme to undervalue the CNL Income Funds." Doc. No. 81 at 56. FF-TSY argues that Plaintiffs' claims are actually for tortious interference with contract, not with business relationship, and their allegations fail to state a claim for the underlying breach.

Pursuant to Florida law, Plaintiffs must establish five elements to state a claim for tortious interference with an advantageous business relationship: (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by defendant; and (5) damage to the claimant caused by the interference. *Furmanite America, Inc. v. T.D. Williamson, Inc.,* 506 F.Supp.2d 1134, 1144-45 (M.D. Fla. 2007) (*Rudnick v. Sears, Roebuck, and Co.*, 358 F. Supp.2d 1201, 1205 (S.D. Fla. 2005)).

Plaintiffs argue that the limited partners were "engaged in a formal business relationship" with Seneff and Bourne, and FF-TSY intentionally interfered with the business relationship by inducing and assisting Seneff and Bourne to "disregard their business relationship with the Limited Partners" including breach of the Limited Partnership Agreement, and the limited partners were damaged through the gross undervaluation of their interests and diversion of value to FF-TSY and CNL Restaurants. Doc. No. 81 at 57.

FF-TSY argues that Plaintiffs' claim is really for tortious interference with business *contract* rather than relationship, and that Plaintiffs have failed to adequately allege any underlying breach of the Limited Partnership Agreements. Plaintiffs cite to case law that a business relationship "need not be evidenced by an enforceable contract," *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127

(Fla. 1985), therefore, by "entering into the Partnership Agreement, Plaintiffs, as Limited Partners of the CNL Income Funds, were engaged in a formal business relationship with Seneff and Bourne, the General Partners of the CNL Income Funds." Doc. No. 81 at 56-57. The claim on its face alleges interference with enforceable contracts, the Limited Partnership Agreements. Doc. No. 72 ¶¶ 15-50, 118, 120, 122, 125. Plaintiffs allege no other "business relationship" between the parties aside from the "relationship" arising out of the Limited Partnerships. Doc. No. 81 at 57; *cf. Furmanite America*, 506 F.Supp.2d at 1145 (alleging tortious interference with customer relationships); *Tamiami Trail*, 463 So.2d at 1127 (same).

FF-TSY argues that because the Plaintiffs' claims for alleged breach of fiduciary duties owed under the Limited Partnership Agreements do not survive the Motion to Dismiss, their claim for tortious interference with contract must also fail, citing *Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530, 1535 (M.D. Fla. 1996), *aff'd*, 132 F.3d 1461 (11th Cir. 1997) (table). In *Hager*, the district court granted summary judgment on the plaintiff's tortious interference claim because the plaintiff failed to establish an underlying breach of contract. *Id.* at 1535; *see also American Medical Intern., Inc. v. Scheller*, 462 So. 2d 1, 8 (Fla. 4th DCA 1984) (holding plaintiff had failed to establish the essential element for tortious interference, the underlying breach of contract).

Plaintiffs' attempts to allege a breach of contract, *i.e.*, of the Limited Partnership Agreements, are precluded because they were not asserted in a derivative capacity; thus, their breach of contract claims fail, and consequently Plaintiffs' claims against FF-TSY for tortious interference with contract must also fail. FF-TSY further argues that even assuming *arguendo* that there was an underlying breach of the Limited Partnership Agreements, Plaintiffs have failed to allege that (its predecessor entities in existence at the time) USRP or CNL Restaurants "intentionally procured" the breach and Plaintiffs must "establish that the defendant's conduct caused or induced the breach that resulted in

the plaintiff's damages." *See Chicago Title Ins. Co. v. Alday-Donaldson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002).

In their claim against FF-TSY for tortious interference (Count IX), plaintiffs failed to allege facts that USRP or CNL Restaurants specifically intended that the General Partners breach the provisions of the Limited Partnership Agreements. FF-TSY argues that Plaintiffs claims allege "the opposite – namely, that Seneff and Bourne brought the Income Funds to USRP as a potential transaction candidate of their own accord" where the Second Amended Complaint asserts that "[the General Partners] suggested that they could bring to the table a new merger partner consisting of the . . . Income Funds" and that the General Partners "proposed" the transaction with USRP. Doc. No. 77, citing Doc. No. 72 ¶¶ 47, 115. Without sufficient allegations of a specific intention to induce a breach, Plaintiffs' claim for tortious interference must fail.

Plaintiffs do not have standing to allege the breach of contract element directly, as discussed *supra*, and Plaintiffs have failed to allege intentional conduct by FF-TSY to induce the alleged breach, even if Plaintiffs had standing, their tortious interference claim must be dismissed.

### D. Standing to assert quasi-direct claims (Count X)

Plaintiffs re-allege in the alternative their claims against the General Partners for breach of fiduciary duty and against FF-TSY for aiding and abetting (in Counts I, II, IV, and V) as "quasi-direct" claims because when the CNL Income Funds were merged out of existence, Plaintiffs lost standing to pursue a classic derivative action on behalf of the CNL Income Funds. Doc. No. 72 ¶ 204. The General Partners and FF-TSY contend that Plaintiffs have no standing to maintain their claims as quasi-direct actions.

Plaintiffs base their quasi-direct standing on the theory that they cannot be divested of standing by the same wrongful conduct that gave rise to their claims arising out of the Merger. They base their

allegation of quasi-direct standing on Rule 23.1 of the Federal Rules of Civil Procedure, which provides standing to assert derivative claims to shareholders or limited partners to enforce a right that the corporation or association "may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1. Although Rule 23.1 has been held to require continuous ownership that Plaintiffs cannot satisfy, Plaintiffs argue that their claims fit within recognized exceptions to the continuous ownership requirement because they allege that the merger itself was the subject of the claim of fraud and they lost their securities due to the same wrongful conduct that was the subject of their derivative claims. Doc. No. 81 at 59-60 (citing cases).

The General Partners argue that no court in Florida has recognized a "quasi-direct" claim as proposed by Plaintiffs, and under Florida law, continuous ownership is required for a limited partner to have standing. *Timko v. Triarsi,* 898 So.2d 89, 91-92 (Fla. 5th DCA 2005) (former shareholder lost standing to prosecute derivative action when his ownership interest in his shares was terminated).

The cases cited by Plaintiffs are inapposite as the Eleventh Circuit explained in the lead case cited by Plaintiffs, *Hantz v. Belyew,* 194 Fed.Appx. 897, 899, 2006 WL 2613447, *1 (11th Cir. Sept. 12, 2006) (unpublished). In *Hantz,* the Eleventh Circuit applying Florida law, held that former shareholders of a corporation whose common stock was eliminated in a Chapter 11 bankruptcy did not meet the continuous stock ownership requirement for standing to bring derivative action under Florida law. *Id.* at *2. The Court held:

> The plaintiffs ask this Court to recognize an exception to the rule of continuous ownership where the loss of stock is involuntary. They cite numerous cases from other jurisdictions concerning individuals who sought to challenge the propriety of mergers in which they lost their shareholder rights. *See, e.g., In re General Instrument Corp.*, 23 F.Supp.2d 867, 872 (N.D. Ill.1998); *Eastwood v. National Bank of Commerce*, 673 F.Supp. 1068, 1077 (W.D. Okla.1987); *Arnett v. Gerber Scientific, Inc.*, 566 F.Supp. 1270, 1273 (S.D. N.Y.1983); *Lewis v. Ward*, 852 A.2d 896, 902 (Del. 2004); *Noakes v. Schoenborn*, 116 Or. App. 464, 841 P.2d 682, 685 (1992); *Gaillard v. Natomas, Co.*, 173 Cal. App.3d 410, 421, 219 Cal. Rptr. 74 (1985); *Gabhart v. Gabhart*, 267 Ind. 370, 370 N.E.2d 345, 358 (1977). The plaintiffs argue that these cases establish that

a shareholder who loses his stock involuntarily is not subject to the continuous ownership requirement. *Schilling* did involve a plaintiff who voluntarily sold his stock, 582 F.2d at 996. While these plaintiffs unwillingly lost their common stock when the Bankruptcy Court confirmed Transit's reorganization plan.

If this issue turned on voluntariness [of divestment of ownership], plaintiffs' analogy might be apt, but involuntariness alone cannot justify an exception to Fed.R.Civ.P. 23.1. Rule 23.1 follows the principle that "[o]nly a shareholder, by virtue of his proprietary interest in the corporate enterprise," has sufficient interest in the well-being of the corporation in order to sue on its behalf. *Schilling*, 582 F.2d at 999 (internal quotation marks omitted). Plaintiffs who lose their shares involuntarily have no greater interest in the continued well-being of a corporation than plaintiffs who willingly sell their shares. Neither class of plaintiff retains a proprietary interest in the corporate enterprise.

The cases that plaintiffs cite turn on redressability. They serve the need to prevent a particular form of injustice where the directors of a corporation divest shareholders of their stock via merger in order to insulate the directors' conduct from judicial review. *See, e.g., Arnett*, 566 F.Supp. at 1273 ("As to common sense, it is obvious that to deny plaintiff-shareholders standing in cases such as this would insulate defendants from liability whenever defendants can consummate a short-form merger without plaintiffs' knowledge and without any opportunity for plaintiffs to obtain an injunction against it."). That is not the situation here. The defendants did not leave the plaintiffs without a forum. Transit's bankruptcy proceedings provided the plaintiffs with an adversarial proceeding in which to air their grievances.

*Id*. at *1-2. While *Hantz* is an unpublished case and therefore not binding, it certainly reflects the Eleventh Circuit's reluctance to carve out an exception under Florida law to the continuous ownership rule. Moreover, the Eleventh Circuit considered and was unpersuaded by most of the same cases from jurisdictions outside of Florida that Plaintiffs cite in their brief. Plaintiffs concede that they did not have continuous ownership once the Merger occurred on February 25, 2005. Accordingly, they did not have continuous ownership and their claims fail. The Court does not find that they have asserted a circumstances to warrant an exception to the continuous ownership requirement.

## CONCLUSION

It is respectfully **RECOMMENDED** that the General Partners' Motions to Dismiss (Doc. No. 79) and FF-TSY's Motion to Dismiss (Doc. No. 77) be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 10, 2009.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy